**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Jul 11 2014, 7:10 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**MICHAEL B. TROEMEL**
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**DAVID E. COREY**
Deputies Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF:<br><br>D.R., Minor Child,<br><br>and<br><br>A.R., Father,<br><br>Appellants-Respondents,<br><br>vs.<br><br>THE INDIANA DEPARTMENT OF CHILD SERVICES,<br><br>Appellee-Plaintiff. | )<br>)<br>)<br>(<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  No. 79A04-1312-JT-614<br>)<br>)<br>)<br>)<br>)<br>) |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Faith Graham, Judge
Cause No. 79D03-1306-JT-38

**July 11, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

A.R. (Father) appeals the involuntary termination of his parental rights to D.R. (Child). Father argues the Department of Child Services (DCS) did not present sufficient evidence that the conditions under which Child was removed would not be remedied and that termination was in Child's best interest. We affirm.

## FACTS AND PROCEDURAL HISTORY[1]

Father and S.L. (Mother)[2] are the parents of Child, born July 23, 2009. Child was removed from Father's care on July 12, 2012, based on a substantiated report to DCS that Father had fled house arrest and Child had been "passed around to different family members" (App. at 30) in the two weeks following Father's absence. When DCS came to investigate the report, it found Child in the care of various people, some of whom were engaged in drug activity. DCS discovered Child

> was wearing only a long shirt and shoes with no diaper . . . had a severe rash on his bottom that was eventually diagnosed as a staph infection. . . . [he] was not wearing his glasses even though he is legally blind . . . [and] was not verbal at three (3) years of age.

(App. at 30.) DCS removed Child from the residence.

Father returned to Indiana in September 2012, claiming he fled the work release program in July, had a blackout, and resurfaced in Oklahoma. Father indicated he thought

---

[1] The record on appeal in this case was prepared pursuant to the Indiana Supreme Court's "Order Establishing the Indiana Court Reporting Pilot Project for Exploring the Use of an Audio/Visual Record on Appeal" issued on September 18, 2012, and effective on July 1, 2012. *See* Ind. Supreme Court Case No. 94S00-1209-MS-522. Therefore, the citations to the transcript will be to the "A/V Rec." We acknowledge the ongoing cooperation of the Honorable Faith A. Graham of the Tippecanoe Superior Court and parties' counsel in the execution of this pilot project.

[2] Mother's parental rights were also terminated, but she does not participate in this appeal. Therefore, we confine our analysis to the facts that support the termination of Father's parental rights.

2

the blackout episode lasted ten to twelve hours, and that he obtained employment as a bounty hunter while in Oklahoma, as a way to save money to return to Indiana. Upon his arrival to Indiana, Father was incarcerated. On October 9, Father admitted Child was a Child in Need of Services (CHINS). When it adjudicated Child as a CHINS, the trial court ordered Father to: contact DCS immediately on his release from incarceration; participate in visitation with Child; refrain from the use of alcohol and illegal drugs; participate in substance abuse, domestic violence, mental health, and parenting assessments and follow the assessments' recommendations; and participate in the Fatherhood Engagement program and follow all recommendations.

Father did not participate in some services, and DCS petitioned to terminate his parental rights on June 5, 2013. The trial court held its first evidentiary hearing on August 16, after which Father was arrested on an outstanding warrant. The trial court held another evidentiary hearing on October 7, and terminated Father's parental rights on December 6.

## DISCUSSION AND DECISION

We review termination of parental rights with great deference. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses.[3] *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In

---

[3] In his brief, Father states, "With the advent of video in TPR [termination of parental rights] proceedings, [Father] urges the court to review his testimony to get a much better flavor of the relationship between father and son." (Br. of Appellant at 10.) To the extent Father is inviting us to judge the credibility of the witnesses, we must decline his invitation.

3

deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied, cert. denied* 534 U.S. 1161 (2002).

When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine whether the evidence supports the findings and whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

"The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied.* A trial court must subordinate the interests of the parents to those of the child, however, when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own child should not be terminated solely because there is a better home available for the child, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

To terminate a parent-child relationship:

> (2) The petition must allege:
> (A) that one (1) of the following is true:
> (i) The child has been removed from the parent for at least six
> (6) months under a dispositional decree.

4

(ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must prove these allegations by clear and convincing evidence. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, the court must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

Father challenges the sufficiency of the evidence supporting the trial court's findings under subsections (B) and (C) of Section 31-35-2-4(b)(2).

1. Reasonable Probability Conditions will not be Remedied

Because our legislature wrote subsection (B) in the disjunctive, a trial court needs to find only one of the three requirements established by clear and convincing evidence before

5

terminating parental rights. *In re L.S.*, 717 N.E.2d at 209. The trial court found the conditions that resulted in Child's removal would not be remedied.

In making such a determination, a trial court must judge a parent's fitness to care for his child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. It must evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* Pursuant to this rule, courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. *A.F. v. Marion Cnty. Office of Family & Children*, 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002), *trans. denied*. The trial court may also properly consider, as evidence of whether conditions will be remedied, the services offered to the parent by DCS, and the parent's response to those services. *Id.* A trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his or her physical, mental, and social growth are permanently impaired before terminating the parent-child relationship. *In re E.S.*, 762 N.E.2d 1287, 1290 (Ind. Ct. App. 2002).

Child was removed from Father's care due to Father's inability to care for him and drug use in the home. The trial court found:

> 11.    Father has a long-standing history of instability and mental health issues. During case management services, Father's reports regarding employment, housing, and other matters appeared implausible. Father described employment for which he is clearly not qualified and unlikely accomplishments such as designing bridges as a civil engineer, designing and building multi-million dollar homes, and being hired by the government as a

bounty hunter. Father's consistent reports of odd jobs in the construction industry are more plausible but reports of owning his own businesses are unconfirmed. When Father was first released from incarceration during the CHINS proceeding, he resided with his fiancée until that relationship ended. The fiancée advised the relationship ended after Father made threats. Father then reported living with a sister making no attempts to obtain independent housing. Father also claimed to be a member of Hell's Angels, Aryan Brotherhood, Skinheads and various other gangs.

\* \* \* \* \*

13. Father has unmet emotional and mental health issues involving a great deal of anger and violence. Father was diagnosed with Cannabis Dependence, PTSD, and Intermittent Explosive Disorder during a mental health assessment in July 2011. Father's mental health assessment indicated a narcissistic and grandiose perception of himself. Father's psychological evaluation in April 2013 revealed diagnoses of Marijuana Dependence, PTSD, Panic Disorder without Agoraphobia, Adjustment Disorder with Depressed Mood, ADHD, and Antisocial Personality Disorder with Borderline Personality Traits. Father displayed "severe character and clinical pathology" likely having a "profoundly negative impact on his personality development". [sic] Test results also suggested possible malingering. It is plausible that Father experiences dissociative episodes and just as plausible that Father manufactures them for self benefit. Father's personality disorder is indicative of long-term functioning difficulties unlikely to change without commitment to ongoing therapy.

\* \* \* \* \*

19. As an adult, Father was convicted of a drug offense in Hamilton County, Indiana in December 1991. Father was convicted of Dealing a Schedule I Controlled Substance (B Felony) on January 9, 1992. The sentencing order notes Father was addicted to LSD, spent a quarter of a million dollars on drugs over a four (4) year period, engaged in making drugs, and had a prior delinquency and/or criminal history including theft and auto theft. Father was sentenced to incarceration for eighteen (18) years with twelve (12) years executed. Motions to modify the sentence were denied noting Father was guilty of twenty-five (25) conduct violations in prison. Upon release from prison, Father violated probation for ongoing drug use and was returned to custody.

20. Father was convicted of Possession of Marijuana on May 13, 1999. Father was sentenced to incarceration for four (4) years with one (1) year executed (work release recommended). Father was rejected from Work Release. Father was convicted of Check Deception (A Misdemeanor) on December 20, 2001. Father was convicted of Domestic Battery (A Misdemeanor) and Invasion of Privacy (A Misdemeanor) on July 23, 2008.

7

21.     Father's criminal activity continued after [Child's] birth. Father was convicted of Possession of Marijuana with Prior Conviction (D Felony) and Habitual Substance Offender on January 6, 2012. Father was sentenced to seven (7) years incarceration with three and one-half (3 ½) years executed (community corrections recommended). Father was convicted of Escape (D Felony) on May 22, 2013. Father was sentenced to five hundred forty-five (545) days incarceration. State filed a Motion to Commit Defendant to the Indiana Department of Correction on August 7, 2013. A warrant was issued and Father was being held without bond at the time of the termination hearing. On October 22, 2013, Father was committed to the Indiana Department of Correction to serve two (2) years and one hundred ninety seven (197) days of incarceration.

22.     Father also has an extensive history of substance abuse both before and after the child's birth. Father admits continued daily use of marijuana commencing at five (5) years of age despite substance abuse treatments. Father admits past use of alcohol, cocaine, barbiturates, benzodiazepines, hallucinogens, ecstasy, and methamphetamine as well. During the CHINS proceedings, Father tested positive for methamphetamine/amphetamine on August 1, 2013.

* * * * *

25.     Although the parents love [Child], neither has the ability to meet [Child's] needs. It is not safe for [Child] to be in the care of Mother or Father. Mother's history of instability, criminal behavior, and substance use continues. Father's history of instability, criminal behavior, mental illness, and substance use continues as well. Mother remains in California and Father is yet again incarcerated. All imaginable services have been offered and nothing is singularly different in today's circumstances since the time of removal. To continue the parent-child relationships would be detrimental to [Child]. [Child] needs permanency now.

(App. at 32-3.) Based on those findings, the trial court concluded:

There is a reasonable probability that the conditions that resulted in the removal of [Child] from the parents' care or the reasons for the continued placement outside the home will not be remedied. Neither parent has yet to demonstrate the ability or willingness to make lasting changes from past behaviors. There is no reasonable probability that either parent will be able to maintain stability and remain substance free in order to care and provide adequately for [Child].

(*Id.* at 33.)

8

Father's arguments regarding his efforts to participate in services and reunify with Child after release from his July 2013 incarceration are invitations for us to reweigh the evidence, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence or judge the credibility of witnesses). DCS presented evidence of Father's ongoing criminal history, including Father's arrest after the first termination hearing and incarceration at the time of the second termination hearing; substance abuse, including a negative drug screen a month before the termination hearing; and mental illness to support the trial court's findings, which supported the conclusion the conditions which resulted in Child's removal from Father's home would not be remedied.

2.      Best Interests of the Child

In determining what is in the best interests of a child, the juvenile court is required to look beyond the factors identified by DCS and look to the totality of the evidence. *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). In so doing, the juvenile court must subordinate the interests of the parent to those of the child. *Id*. Recommendations from the case manager and child advocate that it would be in the child's best interest to terminate the parent-child relationship, in addition to evidence that the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the child's best interests. *In re M.M.*, 733 N.E.2d 6, 13 (Ind. Ct. App. 2000).

Regarding the best interests of Child, the trial court found:

24.     CASA, Betty Hawkins, supports termination of parental rights in the best interests of [Child]. CASA noted [Child] has been involved in sensory

therapy, home-based case management, occupational therapy, and speech therapy to assist with difficult behaviors. [Child] is legally blind and struggled significantly with speech. CASA has observed the foster parent respond with firm but loving care to address [Child's] special needs. [Child] has made progress during foster placement with substantially improved speech. [Child] is bonded with the concurrent foster placement. [Child] is adoptable even if the current placement is unable to adopt for any reason.

(App. at 33.) Father's argument regarding the bond Father has with Child is an invitation for use to reweigh the evidence which we cannot do. *In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence or judge the credibility of witnesses on appeal). DCS presented evidence of Child's medical needs and Father's inability to provide proper care for Child due to Father's criminal behavior, substance abuse, and mental illness. That evidence supports the trial court's findings from which the trial court concluded the termination of Father's parental rights was in Child's best interests.

## CONCLUSION

DCS presented sufficient evidence the conditions under which Child was removed from Father's care would not be remedied and termination was in the Child's best interests. Accordingly, we affirm the decision of the trial court.

Affirmed.

KIRSCH, J., and BRADFORD, J., concur.